Leonard H. Stone Esq.
Nevada Bar No. 5791
SHOOK & STONE, CHTD.
710 South Fourth Street
Las Vegas, Nevada 89101
Tel: (702) 385-2220

Thomas H. Burt (NY. Bar. TB 7601)
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4708

Attorneys for Plaintiffs

(additional counsel appear on signature block)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| STEVE SEGAL, NICK HAMMER, ROBIN HOUGDAHL, TODD TERRY, AND BRADLEY CLASEN On Behalf Of Themselves And All Others Similarly Situated<br><br><br><br>Plaintiff(s),<br><br><br>-against-<br><br><br>HOWARD LEDERER AND CHRISTOPHER FERGUSON<br><br><br><br>Defendant(s). | Case No.: 12-cv-00601<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SETTING OF FINAL FAIRNESS HEARING**<br><br><br><br>Dated: September 30, 2015 |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

I.      INTRODUCTION ................................................................................. 2

II.     BACKGROUND OF THE LITIGATION ............................................. 5

    A.      This Settlement Rectifies Deficiencies In The Prior S.D.N.Y. Settlement ........... 5

III.    SETTLEMENT TERMS ....................................................................... 8

    A.      The Settlement Class ............................................................... 8

    B.      Relief to Settlement Class Members ....................................... 8

        1.      Remedial Measures ...................................................... 8

        2.      Attorneys' Fees, Expenses and Service Awards ...................................... 11

IV.     STANDARDS FOR APPROVAL OF A CLASS ACTION SETTLEMENT ................. 11

V.      THE PROPOSED SETTLEMENT CLASS  SHOULD BE CONDITIONALLY CERTIFIED ........................................................................... 13

    A.      The Settlement Class Satisfies  Federal Rule of Civil Procedure 23(a) .............. 14

        1.      Numerosity ................................................................. 14

        2.      Commonality ............................................................... 14

        3.      Typicality .................................................................... 15

        4.      Adequacy of Representation ........................................ 16

        5.      The Settlement Class Is Cohesive ............................... 18

        6.      The Requirements of Rule 23(b)(2) Are Satisfied .................................. 18

VI.     PLAINTIFFS SHOULD BE APPOINTED CLASS  REPRESENTATIVES AND their chosen counsel  SHOULD BE APPOINTED CLASS and liaison COUNSEL ....... 21

VII.    THE PROPOSED SETTLEMENT MEETS THE  CRITERIA FOR PRELIMINARY REVIEW ........................................................... 21

    A.      The Plaintiffs' Merits Case Is Strong ...................................... 22

    B.      The Litigation Is Complex and Will Be Expensive And Lengthy ....................... 22

    C.      The Reaction of the Settlement Class ..................................... 24

    D.      The Current Stage of The Instant  Litigation Favors Preliminary Approval ........ 27

i

E.      Plaintiffs Face Hurdles In  Securing Injunctive Relief ........................................ 28

F.      Injunctive Relief Is The Best Result for the Settlement Class.............................. 28

G.      Maintaining the Class Action  Through Trial May Be Challenging..................... 30

VIII.   THE PROPOSED SCHEDULE OF EVENTS ................................................ 30

IX.     CONCLUSION.................................................................................................. 30

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Adoma v. University of Phoenix Inc.,*
  913 F. Supp. 2d 964 (E.D. Cal. 2012)...........................................................21

*In re AT&T Mobility Wireless Data Services Sales Litigation,*
  270 F.R.D. 330 (N.D. Ill. 2010)...................................................................27

*Barbosa v. Cargill Meat Solutions Corp.,*
  297 F.R.D. 431 (E.D. Cal. 2013) .................................................................12

*Bishop v. Petro-Chemical Transportation, LLC,*
  582 F. Supp. 2d 1290 (E.D. Cal. 2008) ......................................................13

*Brazil v. Dole Packaged Foods, LLC,*
  12-cv-01831, 2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014)....................18

*Carr v. Tadin,*
  12-cv-3040, 204 U.S. Dist. LEXIS 179835 (S.D. Cal. Apr. 18, 2014) ......................17

*Ching v. Siemens Industry,*
  C 11-4838, 2013 U.S. Dist. LEXIS 169279 (N.D. Cal. Nov. 26, 2013) ....................11

*Clesceri v. Beach City & Protective Services,*
  cv-10-3873, 2011 U.S. Dist. LEXIS 11676 (C.D. Cal. Jan. 27, 2011).......................27

*Cole v. Asurion Corp.,*
  267 F.R.D. 322 (C.D. Cal. 2010) ...................................................... 12-13, 15

*Consolidated Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995)...........................................................................13

*Dufour v. BE LLC,*
  291 F.R.D. 413 (N.D. Cal. 2013) ...........................................................13, 15

*G.F. Contra Costa County,*
  Case No. 13-cv-03667, 2015 U.S. Dist. LEXIS 100512 (N.D. Cal. July 30, 2015).................11

*In re Google Referrer Header Privacy Litigation,*
  10-cv-04809, 2014 U.S. Dist. LEXIS 41695 (N.D. Cal. Mar. 26, 2014) ....................11

*Gray v. Golden Gate National Recreational Area,*
  279 F.R.D. 501 (N.D. Cal. 2011)....................................................... *passim*

*Green v. American Express Co.,*
  200 F.R.D. 211 (S.D.N.Y. 2001) ...................................................................25

iii

*Jermyn v. Best Buy Stores, L.P.*,
  08 Civ. 214, 2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012) ...................................24

*Klee v. Nissan North America, Inc.*,
  12-08238, 2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015) ...........................................26

*Lambeth v. Advantage Financial Services, LLC*,
  1:15-cv-33-BLW, 2015 U.S. Dist. LEXIS 79009 (D. Idaho 2015) ...........................................24

*In re Lifelock, Inc.*,
  08-1977, 2010 U.S. Dist. LEXIS 102612 (D. Ariz. Aug. 25, 2010) ...................................18, 26

*Lilly v. Jamba Juice, Co.*,
  13-cv-02998, 2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015) ................................24

*Linney v. Cellular Alaska Partnership*,
  151 F.3d 1234 (9th Cir. 1998) ...............................................................................................27

*Lo v. Oxnard European Motors, LLC*,
  11cv1009, 2011 U.S. Dist. LEXIS 144490 (C.D. Cal. Dec. 15, 2011) ....................................11

*Mason v. Heel Inc.*,
  3:12-cv-03056, 2014 U.S. Dist. LEXIS 58257 (S.D. Cal. Mar. 13, 2014) ...............................20

*In re Nucoa Real Margarine Litigation*,
  cv 10-00927, 2012 U.S. Dist. LEXIS 189901 (C.D. Cal. June 12, 2012) ........................... 10-11

*In re Quaker Oats Labeling Litigation*,
  5:10-cv-00502, 2014 U.S. Dist. LEXIS 104817 (N.D. Cal. July 29, 2014) .............................20

*Raymond v. Rowland*,
  220 F.R.D. 173 (D. Conn. 2004)............................................................................................18

*Sandoval v. Tharaldson Employee Management*,
  EDCV 08-482-VAP, 2010 U.S. Dist. LEXIS 69799 (C.D. Cal. July 15, 2010) .................12, 21

*Von Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)........................................................................................................14

*In re Yahoo Mail Litigation*,
  13-cv-07980, 2015 U.S. Dist. LEXIS 68585 (N.D. Cal. May 26, 2015)..................................18

iv

# STATUTES AND RULES

28 C.F.R. § 9.8 ...................................................................................................20, 24, 25, 29

28 C.F.R. § 9.8(g) ...........................................................................................................29

28 U.S.C. § 1715 ..........................................................................................................9, 25

28 U.S.C. § 1715(a) ..........................................................................................................25

Class Action Fairness Act ("CAFA") ...............................................................................25

Federal Rules of Civil Procedure
  23 ......................................................................................................................................12
  23(a) ...........................................................................................................................12, 13
  23(a)(1) ............................................................................................................................13
  23(a)(2) ............................................................................................................................14
  23(a)(3) ............................................................................................................................15
  23(a)(4) ............................................................................................................................15
  23(b)(2) ..................................................................................................................... *passim*
  23(g) .................................................................................................................................20
  23(g)(1)(A)(i) ..................................................................................................................21
  23(g)(1)(A)(ii) .................................................................................................................21
  23(g)(1)(A)(iii) ................................................................................................................21
  23(g)(1)(A)(iv) ................................................................................................................21
  23(e) ...........................................................................................................................10, 24

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964, *et seq.* .........16

Uniform Internet Gambling Enforcement Act (the "UIGEA"), 31 U.S.C. § 5363 and § 5366 .......9

# OTHER AUTHORITIES

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions ("Newberg")*, § 11.25
(4th ed. 2002) ............................................................................................................11, 24

v

Plaintiffs[1] respectfully submit this memorandum in support of their Motion for Preliminary Approval of Class Action Settlement and Setting of Final Fairness Hearing.  The settlement agreement ("Agreement") to which the Parties have agreed is filed concurrently herewith.[2] *See* Burt Aff. Ex. G.

## I.  <u>INTRODUCTION</u>

Plaintiffs seek preliminary approval of the proposed nationwide class action settlement of this action against defendants Christopher Ferguson and Howard Lederer ("Defendants"). Defendants were key executives and directors of the umbrella entity known as Full Tilt Poker, which provided both free and real-money online poker rooms for U.S. players.  The Settlement meets Plaintiffs' goals of this litigation.   The Settlement Class has already been provided with full monetary relief as a result of the U.S. Department of Justice's settlement with certain Full Tilt Poker entities and individuals,[3] and partial, limited therapeutic relief.[4] This Settlement, however, supplements that relief by providing additional protections above and beyond the prior U.S. Department of Justice's earlier settlements.  As explained in greater detail below, this Settlement is not conditional in any way on future developments to the law of internet gaming or gambling.  The Settlement, standing on its own merits, is thus an excellent result for the Settlement Class.

Plaintiffs' central allegation in this Action is that Defendants executed a scheme involving the Full Tilt Poker online gaming enterprise whereby they accepted player deposits in contravention

---

[1] Plaintiffs refers to: (1) Plaintiffs Steve Segal, Toddy Terry, Nick Hammer, Robin Hougdahl, and Bradley Clasen.

[2] All capitalized terms have the same meaning as set forth in the Agreement unless otherwise indicated.

[3] *See U.S. v. Pokerstars, et al.*, 11-cv-2564 (S.D.N.Y.) Dkt. No. 240.

[4] *See U.S. v. Pokerstars, et al.*, 11-cv-2564 (S.D.N.Y.) Dkt. No. 295; Dkt. No. 301.

of federal gambling laws through the use of shell corporations and then, despite repeated statements and representations to the contrary, intermingled the player funds with company and private accounts.  On April 15, 2011, or "Black Friday" as it is referred to by the on-line poker community and press, the U.S. Department of Justice seized the assets of Full Tilt Poker and, as a result, player accounts were frozen.  Days later, the U.S. Department of Justice permitted Full Tilt Poker use of its domain for the purpose of redistributing player funds; however, unlike other affected online gaming enterprises, Full Tilt Poker did not redistribute player funds.  On September 21, 2011, it was alleged in the U.S. Department of Justice's amended complaint that Full Tilt Poker had operated as a Ponzi scheme, intermingling player funds with company operational accounts for the purpose of syphoning off player deposits to pay Defendants and Full Tilt Poker related entities, executives and shareholders.

Based on these allegations and evidence, along with press reports and their own counsel's research and investigation, Plaintiffs alleged that Defendants by and through Full Tilt Poker and its related entities had misled the Settlement Class, converted the funds from Player Accounts through improper channels, and shell companies used to payment processors, and used the funds to enrich themselves and others to the detriment of the Settlement Class.  Plaintiffs alleged in this Action a cause of action for conversion.  While Defendants have denied all allegations in the Amended Complaint, they have agreed to resolve the dispute according to terms in the Agreement.

As a result of this Settlement, Plaintiffs have achieved a meaningful benefit for the Settlement Class – therapeutic, injunctive relief, which will prevent Defendants Lederer and Ferguson from repeating the wrongdoing alleged in this Action and from repeating the wrongdoing alleged herein.  This Settlement provides significant relief to the Class because it is not subject to changes in law regarding and concerning internet gaming and gambling.  The relief will survive and protect the Class even if the law changes and renders the U.S. Department of Justice's therapeutic

relief moot.  Plaintiffs believe this Settlement benefit provides the necessary fail-safes in addition to the monetary and therapeutic relief previously secured by the U.S. Department of Justice.  Moreover, this relief is an outstanding result when weighed against any potential monetary recovery beyond the Class's account balances on April 15, 2011, especially given the remote possibility of it reaching the Class.  Plaintiffs request that the Court conditionally certify for settlement only (which Defendants support for settlement purposes only) the following Settlement Class:

> all U.S. persons or entities, exclusive of Defendants and their employees, affiliates or entities, who had monies in a Full Tilt Poker Player Account on April 15, 2011, and subsequently were unable to access the monies from their Full Tilt Poker Player Account.

> *See* Burt Aff. Ex. B, ¶29; Ex. G, §3.3.

As a Federal Rule of Civil Procedure 23(b)(2) class seeking to be certified for the purposes of injunctive relief, notice is squarely within the discretion of the Court, but not required for absent class members.  Although Plaintiffs originally sought monetary damages in connection with this Action, the settlement achieved by the U.S. Department of Justice has provided the Class members with payment in full for the balance on their Player Accounts as of April 15, 2011.  With the account balances repaid, Plaintiffs filed an Amended Complaint seeking injunctive relief and advance this Settlement Class for certification pursuant to Fed. R. Civ. P. 23(b)(2), seeking solely therapeutic relief, which would close the gaps and loopholes created by the U.S. Department of Justice settlement.  *See* Burt Aff., Ex. B.

Preliminary approval does not require the Court to rule on the ultimate fairness of the Settlement, but only to make a "preliminary determination" of, *inter alia*, the "fairness, reasonableness, and adequacy" of the proposed settlement.

Here, as set forth in further detail below, the Settlement plainly meets the standard for preliminary review.  Thus, Plaintiffs respectfully request that the Court enter the contemporaneously filed [Proposed] Order Preliminarily Approving Class Action Settlement Enjoining Litigation

4

("Preliminary Approval Order") that, among other things: (1) conditionally certifies the Settlement Class for settlement purposes; (2) designates Plaintiffs Steve Segal, Todd Terry, Robin Hougdahl, Nick Hammer, and Bradley Clasen as Class Representatives; (3) appoints Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"), Finkelstein Thompson LLP ("Finkelstein Thompson"), Wolf Popper LLC, ("Wolf Popper") and Gustafson Gluek P.L.L.C. as Class Counsel and Shook & Stone Chtd. ("Shook & Stone") as Liaison Counsel for the Settlement Class; and (4) schedules a Final Fairness Hearing for the Settlement.

## II.   BACKGROUND OF THE LITIGATION

For a detailed summary of the pertinent facts of the litigation, including (1) the complaints filed in this Action; (2) motion practice; and (3) the settlement negotiations amongst the parties, please see the Affidavit of Thomas H. Burt in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Setting of Final Fairness Hearing ("Burt Aff.," filed concurrently herewith) dated September 30, 2015.

Every aspect of this Settlement was heavily negotiated, including the form of remedial measures to be taken by Defendants, the potential and real benefits to the Class, and each aspect of the Agreement and exhibits. *See* Burt Aff. at ¶ 29. Class Counsel have determined that the Settlement of the Related Actions on the terms reflected in the Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class. *See id.*

### A.   This Settlement Rectifies Deficiencies In The Prior S.D.N.Y. Settlement

In the United District Court for the Southern District of New York, Plaintiffs had a previously live and related claim in the action of *Segal, et al. v. Bitar, et al.,* 11-4521 (KNF) ("*Bitar*"). *See* Burt Aff., ¶ 5. On January 7, 2014, Plaintiffs along with plaintiffs in two other related actions - *Jetha, et al, v. Filco Ltd.,* 11-cv-5519 (KNF), and *Lawson v. Full Tilt Poker, Ltd., et al.,* 11-cv-6087 (KNF) - which were also pending in the Southern District of New York moved for

preliminary approval of a settlement, which would resolve all three actions (the "S.D.N.Y. Settlement"). *See id.*, ¶ 21. Notably, prior to moving for preliminary approval, these actions were not consolidated. With the motion pending, U.S. Magistrate Judge Kevin N. Fox ordered a telephonic conference to be held to discuss the pending preliminary approval motion. *See id.*, ¶22. On March 24, 2015, the telephonic conference was held and therein, Magistrate Judge Fox discussed certain issues with the pending motion and offered counsel the opportunity to correct the deficiencies. *See id.* On March 31, 2015, movants filed their revised memorandum of law and a revised affidavit in support of their motion for preliminary approval of settlement. *See id.* Despite movants' efforts, on May 26, 2015, Magistrate Judge Fox denied the motion for preliminary approval of the S.D.N.Y. Settlement. *See id.*, ¶ 23.

In the May 26, 2015 Order denying preliminary approval, Magistrate Judge Fox explained that there were several deficiencies resulting directly from the inconsistencies or omissions in the pleadings of the three actions. *See Segal, et al. v. Bitar, et al.*, 11-cv-4521-KNF (S.D.N.Y.) Dkt. No. 153. As explained more fully below, the issues result mainly from a procedural misstep – a failure to consolidate the three pending matters and draft a consolidated, amended pleading, which would have resolved the issues raised in Magistrate Judge Fox's Order. The deficiencies highlighted by the Court included: (i) differences in the Class definitions; (ii) differences in the claims; and (iii) differences in the relief sought. As explained below, the motion before this Court is substantially different because the circumstances are substantially different.

First, the inclusion of a foreign plaintiff and the divergent interests and differing circumstances of foreign players and U.S. players were major issues in opting to not certify the proposed settlement class and denying preliminary approval of the S.D.N.Y. Settlement. For example, Magistrate Judge Fox explained that foreign players were able to recover their funds

almost immediately following the U.S. Department of Justice's settlements with PokerStars and Full Tilt Poker, whereas, U.S. Players were forced to go through a lengthy remission and distribution process. Here, there are no such issues since all Plaintiffs and Class members are U.S. players, there is uniformity and commonality amongst the Plaintiffs and the Settlement Class. *See Bitar,* 11-cv-4521 (KNF), Dkt. No. 153, p. 22.  The Amended Complaint before this Court contains a class definition which is entirely consistent with the one that Plaintiffs proffer in the Settlement.  *See* Burt Aff., ¶ 29.  Moreover, there is no conflict amongst Plaintiffs – all are U.S. Players, who brought this action on behalf of and seek to act as class representatives for a class of U.S. Players.

Second, in denying preliminary approval, Magistrate Judge Fox highlighted that certain pleadings contained claims, which were absent from others.  For example, in discussing commonality, Magistrate Judge Fox explained that "[t]he first question is not common to the members of the Jetha action because they neither asserted RICO nor conversion claims in their complaint."  *Bitar,* 11-cv-4521 (KNF), Dkt. No. 153, p. 18.  In another example, Magistrate Judge Fox explained that "[t]he third question, "whether an enforceable contract existed between the Full Tilt Poker players and Full Tilt Poker," and the fourth question, "whether that contract was breached," was not common to all members of the proposed settlement-agreement class because the Segal and the Lawson complaints do not contain breach of contract claims."  *Id*.  Here, there is no such issue.  In contrast to the S.D.N.Y. Settlement, the Amended Complaint is the only operative pleading and contains a single claim for conversion.[5]  Thus, none of the inconsistencies discussed by Magistrate Judge Fox are present on the record before this Court.

_____

[5] In discussing adequacy, Magistrate Fox takes issue with the *Segal* Plaintiffs' failure to include class certification in the "Prayer for Relief" section of its complaint.  *See Segal*, 11-4521 (KNF), Dkt. No. 153, p. 20-21.  While Plaintiffs do not agree with Magistrate Judge Fox's analysis, in an abundance of caution, Plaintiffs direct the Court to the prayer for relief section in the Amended Complaint, which includes a request for "[a]n order certifying this action as suitable for class treatment."

Third, in weighing preliminary approval, Magistrate Judge Fox explained that there were inconsistencies in the relief sought by the movants in their complaints.  *See id*., p. 20-22; 25-26.  Magistrate Judge Fox explained that movants sought money damages in their complaints and thus, it was a sufficient basis for denying class certification pursuant to Fed. R. Civ. P. 23(b)(2).  *Id*., p. 25-26.  As has been explained, the issue concerning inconsistent relief has been resolved – there is one operative Amended Complaint, which seeks injunctive relief.  That the Amended Complaint only seeks injunctive relief is sufficient on its face to resolve the money damages issue raised by Magistrate Judge Fox.  As explained in greater detail below, the Settlement Class is ideally suited for certification pursuant to Rule 23(b)(2).

Thus, the Settlement presently before the Court is much different than the failed S.D.N.Y. Settlement because the procedural deficiencies highlighted by Magistrate Judge Fox have all been addressed by Plaintiffs.

## III.    SETTLEMENT TERMS

The Agreement, filed concurrently with this motion, contains the complete terms of the Settlement, which are summarized below:

### A.    The Settlement Class

The Agreement defines a national Settlement Class under Rule 23(b)(2).  *See* Burt Aff., Ex. G, §§ 2.28; 3.3.

### B.    Relief to Settlement Class Members

#### 1.    Remedial Measures

As part of the Settlement, Defendants have agreed to certain remedial measures regarding Defendants' involvement in any future online gaming enterprise for a period of four years from the date of the potential Settlement's Effective Date.

> (i)    Defendants agree not to own or operate a real-money online gaming enterprise unless such enterprise agrees: (a) to keep all

8

players' funds in a trust account (or accounts) segregated from the operating funds of the enterprise, or (b) to cover the funds through a fidelity bond – assuming that these safeguards are allowed under the license and regulatory system under which the online gaming site operates, however, if these safeguards are not permitted under that license or regulatory system or otherwise become unavailable, then Defendants Lederer and Ferguson can only be an owner or operator of that enterprise if there is another system in place that ensures that players' funds have the same degree of security.

(ii)     Defendants agree not to be employed by a real-money online gaming enterprise if their day-to-day responsibilities include control over player accounts or payments to and from players.   For the avoidance of doubt, Defendants can, consistent with this agreement, sit on boards (or similar bodies) of such enterprises or take management positions in such enterprises—and in those positions they can supervise accounting functions so long as there are adequate financial oversights and internal controls in place that cover player accounts and payments to and from players and consistent with the restriction above, their day-to-day responsibilities do not include control over player accounts or payments to and from players.

(iii)     Defendants agree that in the event that they learn any enterprise providing real-money online gaming services with which he is or they are associated is failing to comply with gaming regulations imposed by the relevant licenses or regulatory system and/or the laws of the United States, Defendants agree to report such noncompliance as soon as practicable to their superiors at the enterprise; and if no corrective action is taken by the enterprise, Defendants must report such noncompliance to a governmental or licensing body with authority to take corrective action.

(iv)     If Defendant is an owner or operator of any real-money online gaming enterprise, then their position must be disclosed on the enterprise's website.[6]

See Burt Aff., Ex. G, § 3.3.

As explained below, Defendants have already complied with notice requirements of the Class Action Fairness Act in connection with the prior proposed settlement in the United States District Court for the Southern District of New York.  See 28 U.S.C. § 1715.  Of course, Defendants will

---

[6] The parties agreed that "ownership" means a 10% or greater interest in the enterprise and that "operates" means acting in a senior management capacity.

9

notify the U.S. Department of Justice and the Attorneys General of all fifty states again on the instant motion.  See Burt Aff., Ex. G, § 6.1.  No opposition was made to the prior settlement and none is anticipated upon renewed notice.

Notably, the restrictions in the Settlement are not contingent on the state of internet gambling law or regulation and thus, extend beyond the reach of the U.S. Department of Justice's settlements with Defendants.  *See* Burt Aff. Ex. G *contra U.S. v. Pokerstars*, *et al*., 11-cv-2564 (S.D.N.Y.) Dkt. No. 295; Dkt. No. 301.  If the Court approves this settlement, the Class will be protected from Defendants' potential for wrongdoing regardless of any change in the law regarding internet gaming – an area that is rapidly developing and subject to significant changes.

The Uniform Internet Gambling Enforcement Act (the "UIGEA"), 31 U.S.C. § 5363 and § 5366, as alleged in the U.S. Department of Justice's initial complaint, renders the processing of certain financial transactions by banks in connection with unlawful internet gambling illegal.  The actual illegality and regulation of the gaming itself turns on and has been left for the states to decide. Thus, if a state determined that online poker was legal, the UIGEA would be inapplicable because the internet gambling would no longer be unlawful.

States like Nevada, New Jersey and Delaware have already legalized internet gambling and several states currently have bills pending, which would do the same.[7]  As a result, Defendants can already re-enter the online poker industry in three states with more on the horizon.   Thus, the therapeutic relief in the U.S. Department of Justice's settlements with Defendants already has cracks,

---

[7] Seven states – California, Illinois, Massachusetts, Mississippi, New York, Pennsylvania and Washington – have introduced bills that would legalize online gaming.  *See* 2015 Internet Gambling Legislation, National Conference of States Legislatures, http://www.ncsl.org/research/financial-services-and-commerce/2015-internet-gambling-legislation.aspx (Last visited: September 24, 2015).

and there is potential that the floodgates will open in the near-future with a number of states considering legislation that would permit online gaming within their borders.[8]

### 2.    Attorneys' Fees, Expenses and Service Awards

Any attorneys' fees, expenses or service awards if approved by the Court will be paid by Defendants.  *See* Burt Aff. Ex. G, at § 4.2.  They represent a very small percentage of counsels' lodestar time and out-of-pocket expenses.  This fee and expense agreement was only negotiated after the parties had reached agreement on all the other terms of this Settlement.  They are relatively modest compared to the time and expense borne by Plaintiffs' counsel.

### IV.    STANDARDS FOR APPROVAL OF A CLASS ACTION SETTLEMENT

Rule 23(e) governs the settlement of class actions, which provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Judicial approval of settlements under Rule 23(e) requires a "two-step process." *In re Nucoa Real Margarine Litig.*, cv 10-00927, 2012 U.S. Dist. LEXIS 189901, at *34 (C.D. Cal. June 12, 2012).  During this first step, the court considers whether the settlement "deserves preliminary approval." *Id.*

The Ninth Circuit maintains "a strong judicial policy," which favors the settlement of class actions. *G.F. v. Contra Costa Cnty.*, Case No. 13-cv-03667, 2015 U.S. Dist. LEXIS 100512, at *27 (N.D. Cal. July 30, 2015) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)).  When considering preliminary approval, the Court must "determine whether the settlement falls within a reasonable range of possible settlements, with 'proper deference to the private consensual decision of the parties' to reach an agreement rather than continuing to litigate." *In re Google*

---

[8] As a further example of the imminent internet gaming boom, PayPal, the online payment processing giant, has begun to process transactions for legal internet gaming sites in the states of Delaware, New Jersey and Nevada.  *See* Forbes, "PayPal is getting back into U.S. online gambling," http://fortune.com/2015/09/15/paypal-gambling/ (Last visited: September 24, 2015).

*Referrer Header Privacy Litig.*, 1-cv-04809, 2014 U.S. Dist. LEXIS 41695, at *6 (N.D. Cal. Mar. 26, 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 9th Cir. 1992).

After determining class certification, the Court "must next make a preliminary determination whether the settlement is fair, reasonable and adequate pursuant to Rule 23(e)(1)(C)." *Lo v. Oxnard European Motors, LLC*, 11cv1009, 2011 U.S. Dist. LEXIS 144490, at *11 (C.D. Cal. Dec. 15, 2011). On preliminary approval, the Court does not make a full and final determination regarding fairness, the Court need only make its preliminary determination so that a fairness hearing may be scheduled to make a final determination regarding the fairness of the settlement. *See* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), § 11.25 (4th ed. 2002). Preliminary approval "is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ching v. Siemens Indus.*, C 11-4838, 2013 U.S. Dist. LEXIS 169279, at *18 (N.D. Cal. Nov. 26, 2013).

The central issue raised by the proposed settlement of a class action is whether "the settlement is fair, reasonable, and adequate." *Sandoval v. Tharaldson Emp. Mgmt.* EDCV 08-482-VAP, 2010 U.S. Dist. LEXIS 69799 (C.D. Cal. July 15, 2010). In determining whether to grant preliminary approval, the court should be guided by "overriding public interest in settling and quieting litigation" and such especially true in the context of class action lawsuits. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Barbosa*, 297 F.R.D. at 446 (quoting *Nat'l Rural Telecoms. Coop. v. DIRECTV Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

As explained in greater detail below, the Settlement meets the requirements and standards for preliminary approval.

## V.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED

When presented with a proposed settlement, a court must first determine whether the proposed settlement class meets the requirements for class certification under Rule 23.   "Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b)."   *Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501, 507 (N.D. Cal. 2011).

Under Rule 23(a), Plaintiffs are required to meet the following prerequisites: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class, and (4) the class representatives will fairly and adequately protect the interests of all members of the class."   *Cole v. Asurion Corp.*, 267 F.R.D 322, 325 (C.D. Cal. 2010). The decision to grant or deny class certification is committed to the trial court's broad discretion. *See Gray,* 279 F.R.D. at 508 ("It is in the district court's discretion whether a class should be certified"). Plaintiff can satisfy its "burden by providing the Court with a sufficient basis for forming a reasonable judgment on each requirement."   *Bishop v. Petro-Chemical Transp., LLC*, 582 F. Supp. 2d 1290, 1306 (E.D. Cal. 2008) (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(2). Class certification pursuant to Fed. R. Civ. P. 23(b)(2) is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."   Courts "within the Ninth Circuit have taken a more liberal view of Rule 23(b)(2) requirements."   *Gray,* 279 F.R.D. at

521.   Here, the conditional certification of the Settlement Class is appropriate for purposes of settlement because all the requirements of Rule 23 have been met.

**A.    The Settlement Class Satisfies
Federal Rule of Civil Procedure 23(a)**

Rule 23(a) enumerates four prerequisites for class certification, referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Here, each of these requirements is met.

**1.    Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  The threshold to establish numerosity is low.  *See, e.g., Dufour v. BE LLC*, 291 F.R.D. 413, 419 (N.D. Cal. 2013) (Plaintiffs met the "low burden of establishing numeroisty"); *see also Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").  Here, thousands of individuals held monies in Full Tilt Poker Player Accounts when they were frozen on April 15, 2011.  Full Tilt Poker was among the three largest online poker companies on April 15, 2011, or "Black Friday."  The Full Tilt Poker claims website has provided detailed updates concerning tens of thousands of distributions to members of the Settlement Class.  *See* Burt Aff., Ex. H.  This evidence is more than sufficient to satisfy the requirement of numerosity.

**2.    Commonality**

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class" for a suit to be certified as a class action. Fed. R. Civ. P. 23(a)(2).  In the Ninth Circuit, commonality "has been construed permissively."  *Gray*, 279 F.R.D. at 508 (quoting *Hanlon*, 150 F.3d at 1019.  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . . Their claims must depend upon a common contention."  *Wal-Mart Stores, Inc. v. Dukes*,

131 S. Ct. 2541, 2551 (2011) (internal citation omitted).  Indeed, it is unnecessary for all questions of law and fact to be common, the mere "existence of shared legal issues with legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Gray*, 279 F.R.D. at 508 (quoting *Hanlon*, 150 F.3D at 1019).

Here, there are many common issues of fact and law, which are more than sufficient to satisfy the Ninth Circuit's liberal standard, including whether Defendants converted the monies in the Player Accounts through the use of shell corporations; whether Defendants converted the monies by intermingling the funds with Full Tilt Poker operational accounts and the personal accounts of shareholders, directors and executives; and whether injunctive relief is appropriate.  Moreover, Plaintiffs and the Class are all players situated in the United States, who had the monies in their Player Accounts frozen on April 15, 2011, and lost access to those funds until they had the opportunity to make claims and receive those funds via distribution nearly three years later, at the earliest.  *See* Burt Aff. Ex. I.  Accordingly the commonality element is met.

### 3.    Typicality

Rule 23(a)(3) provides that the claims of Plaintiffs must be "typical of the claims . . of the class."  Fed. R. Civ. P. 23(a)(3).  Similarly to commonality, the Ninth Circuit standard for typicality is permissive, meaning that: "representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Cole*, 267 F.R.D at 326 (citing *Hanlon*, 150 F.3d at 1020).  Typicality is satisfied where the representatives' claims "are reasonable coextensive with those of absent class members."  *Dufour*, 291 FR.D. at 419 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009)).

Typicality is met here as Plaintiffs and the proposed Settlement Class assert the same claims, arising from the same course of conduct — Defendants funneling and distributing funds from the Player Accounts through shell companies, operational accounts and personal accounts.  Under the

claims alleged, Plaintiffs and Settlement Class Members also seek the same relief for the same alleged wrongful conduct.   Plaintiffs' claims are the same as those of other Settlement Class Members.

### 4.   **Adequacy of Representation**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).   "Representation is adequate if: (1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class." *Gray*, 279 F.R.D. at 520.

Adequacy has been met in this case.  First, the interests of Plaintiffs, the Class Representatives, and the Settlement Class Members are fully aligned and conflict free: both Plaintiffs and other Settlement Class Members are seeking redress from what is essentially the same injury and there are no disabling conflicts of interest.  Second, the proposed Class Counsel is qualified and experienced in class action litigation.  *See* Burt Aff., Ex. C-F (Wolf Haldenstein, Finkelstein Thompson, Wolf Popper and Gustafson Gluek Firm Resumes).[9] As explained below, and in greater detail below, both Plaintiffs and Class Counsel have vigorously pursued claims on behalf of the Class in numerous venues and thus, are proper and adequate class representatives and class counsel.

Prior to the initiation of this litigation, Class Counsel filed a detailed, thorough pleading in the Southern District of New York against Defendants, among others, which alleged common law

---

[9] Class Counsel have performed extensive work to date in identifying and investigating potential claims in the Related Actions and acquiring data through the U.S. Department of Justice action against Full Tilt Poker, along with the national media and poker media, while conducting ample legal research for the claims.  *See* Burt Aff., ¶¶ 5, 10, 28.  The net result of such research and effort was represented in detailed class action complaints and in successfully negotiating the proposed Agreement.  *See id*., ¶¶ 5, 10, 28, 29; Exs. A-B; G.

conversion claims and civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964, *et seq*. *See id*., ¶5. Almost immediately after filing and with great uncertainty surrounding the situation at Full Tilt Poker, Class Counsel made an effort to preserve the assets and records of Full Tilt Poker and its various related entities, many of which were situated overseas. *See id*., ¶6. In fact, Class Counsel had to enlist an attorney from England and send him to Alderney to serve Full Tilt Poker-related entities as was required. *See id*., ¶7. Although the Class Counsel's efforts to preserve and seize assets of Full Tilt Poker ultimately took a backseat to the U.S. government's drive to do the same, it came at some effort and expense. Additionally, the case in the Southern District of New York was litigated in front of three separate judges and there was briefing through a preliminary injunction, and motion to dismiss, the latter denied in part. *See id*., ¶¶ 6, 8.

However, as Plaintiffs' action in the Southern District of New York was dismissed as to Defendants for jurisdictional defects, Class Counsel drafted and filed Plaintiffs' Initial Complaint in this Court alleging the common law claim of conversion. *See id*., ¶ 10. Further, Plaintiffs provided this Court with steady updates concerning the status of the litigation in the Southern District of New York, the U.S. Department of Justice's settlement with Full Tilt Poker and PokerStars, and the distribution to the Settlement Class. *See id*., ¶16.

Prior to the settlement between the U.S. Department of Justice with Full Tilt Poker and PokerStars, Class Counsel was in regular contact with the U.S. Attorney's Office for the Southern District of New York to encourage the distribution of any seized assets to the Settlement Class. *See id*., ¶ 12. In fact, Class Counsel on several occasions explained to attorneys involved in that process that Plaintiffs would challenge any settlement and release related to Full Tilt Poker that did not include a distribution of funds to the Settlement Class. *See id*.

Class Counsel have also carefully deliberated amongst themselves and with their clients to craft precise and necessary therapeutic, injunctive relief, which will provide real value to the

Settlement Class.  *See id.*, ¶29.  The Settlement is the result of thorough negotiations with Defendants' counsel, which involved negotiations both in-person and telephonically over months with numerous drafts exchanged before being finalized.

Thus, there can be no doubt that Plaintiffs are adequate class representatives and Class Counsel has vigorously prosecuted this action on behalf of the Settlement Class.

### 5.   **The Settlement Class Is Cohesive**

Rule 23(b)(2) classes need not meet the predominance and superiority requirements, however, it is "well established that the class claims must be cohesive." *Carr v. Tadin, Inc*., 12-cv-3040, 2014 U.S. Dist. LEXIS 179835, at *9 (S.D. Cal. Apr. 18, 2014) (quoting *Gates v. Rohm & Haas Co.,* 655 F.3d 255, 263-64 (3d Cir. 2011)).  Indeed, "it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole."  *In re Yahoo Mail Litig*, 13-cv-04980, 2015 U.S. Dist. LEXIS 68585, at *55 (N.D. Cal. May 26, 2015).  Here, Plaintiffs have sufficiently alleged that the Settlement Class was subject to a common pattern of wrongdoing by Defendants, who by and through the Full Tilt Poker umbrella entity, converted the Settlement Class's monies by intermingling the monies with Full Tilt Poker operational funds and distributing them to personal accounts held by them and other Full Tilt Poker executives, directors and shareholders.  Additionally, as evidence of cohesiveness, the United States Attorney for the Southern District of New York initiated a process of distribution to compensate the Class – "eligible victims of the fraud committed by Full Tilt Poker against United States players." Burt Aff. Ex. I.  Thus, the Settlement Class is sufficiently cohesive.

### 6.   **The Requirements of Rule 23(b)(2) Are Satisfied**

Plaintiffs seek certification of a Settlement Class under Rule 23(b)(2), which "permits certification of a class when the class is seeking injunctive or declaratory relief."  Certification pursuant to Rule 23(b)(2) is appropriate where, as here, "the allegations specify conduct by

Defendant directed at the class as a whole, and injunctive relief would be appropriate with regard to the class as a whole." *Raymond v. Rowland*, 220 F.R.D. 173, 181 (D. Conn. 2004).  This inquiry is encompassed within the commonality requirement of Rule 23(a), which has been satisfied as explained above.  *See In re LifeLock, Inc.,* 08-1977, 2010 U.S. Dist. LEXIS 102612, at *11 (D. Ariz. Aug. 25, 2010).  Class certification pursuant to Rule 23(b)(2) "is appropriate only where the primary relief sought is declaratory or injunctive."  *Brazil v. Dole Packaged Foods, LLC,* 12-cv-01831, 2014 U.S. Dist. LEXIS 74234, at *36 (N.D. Cal. May 30, 2014).

These requirements are satisfied here.  Defendants allegedly engaged in a common form and scheme of conduct that harmed the Settlement Class.  By and through their involvement with Full Tilt Poker and despite repeated representations to the contrary, Defendants converted the Settlement Class's funds kept in the Player Accounts by intermingling them with the operational funds of Full Tilt Poker and distributed the funds to their own personal accounts and accounts of other Full Tilt Poker executives, directors and shareholders.  The Settlement Class lost access to the funds inside their Player Accounts beginning on April 15, 2011, and such access was never restored.  Instead, the members of the Settlement Class would only regain their ability to access their funds via distribution resulting from the U.S. Department of Justice's settlement with Full Tilt Poker, among others.

It cannot be disputed that the primary relief sought is injunctive in nature and thus, has triggered Rule 23(b)(2) for certification purposes because the only relief sought by Plaintiffs in the Amended Complaint and proposed in the Settlement is injunctive in nature.  The U.S. Department of Justice's settlements with Defendants provide no more than that Defendants not violate the law. Federal gaming law, in turn, merely provides that certain financial transactions are prohibited in connection with unlawful internet gambling, however, three states, including Nevada, have legalized internet gambling with several other states considering legislation doing the same.  Any change in U.S. law or in the law of states permitting internet gambling effectively moots the therapeutic relief

19

in the U.S Department of Justice's settlement with Defendants. The primary and only relief sought here would resolve that issue by placing real, qualified restrictions on Defendants that are not premised upon the status of gaming law or regulation. The injunctive relief provides such protection to the Settlement Class (and the public at-large) should Defendants re-enter the online real money gaming industry at any point in the next four years by placing certain operational and notice requirements on such involvement.

It is of little consequence that the Settlement Class would release claims for monetary damages against Defendants under the Settlement. As explained below, any recovery would be difficult to achieve and would be minimal for each individual Settlement Class member. Further, the likelihood of the Settlement Class actually receiving said recovery is slim. In numerous instances, courts in the Ninth Circuit have approved settlements for a Rule 23(b)(2) class seeking and settling for primary injunctive relief, where claims for monetary damages were released in the settlement agreement. *See In re Quaker Oats Labeling Litig.*, 5:10-cv-00502, 2014 U.S. Dist. LEXIS 104817, at *3 (N.D. Cal. July 29, 2014); 10-cv-00502 Dkt. No. 168, Atch. 1 (Settlement Agreement); *Mason v. Heel Inc.*, 3:12-cv-03056, 2014 U.S. Dist. LEXIS 58257, at *34 (S.D. Cal. Mar. 13, 2014); 12-cv-03056, Dkt. No. 26, Atch. 2 (Settlement Agreement). In those matters, claims for monetary relief were much more viable than here where 28 C.F.R. § 9.8 places the distribution of any potential recovery for the Settlement Class in great doubt.

As a result, this injunctive relief would provide benefits to the Settlement Class and class certification under Rule 23(b)(2) is warranted.

/ / /

/ / /

/ / /

/ / /

20

## VI. PLAINTIFFS SHOULD BE APPOINTED CLASS REPRESENTATIVES AND THEIR CHOSEN COUNSEL SHOULD BE APPOINTED CLASS AND LIAISON COUNSEL

Plaintiffs also request (and Defendants do not contest for settlement purposes only) that the Court designate Plaintiffs as Class Representatives for the Settlement Class.  As discussed above, Plaintiffs will fairly and adequately protect the interests of the Settlement Class.

Additionally, Plaintiffs respectfully request that Wolf Haldenstein, Finkelstein Thompson, Gustafson Gluek and Wolf Popper be appointed Class Counsel for the Settlement Class.  Rule 23(g) enumerates four factors for evaluating the adequacy of proposed counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel that will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).   All of these factors militate in favor of appointing Wolf Haldenstein, Finkelstein Thompson, Gustafson Gluek and Wolf Popper as Class Counsel.   The proposed Class Counsel are experienced and well-equipped to vigorously, competently and efficiently represent the proposed Settlement Class.  *See* Burt Aff., Ex. C-F.  Accordingly, the Court should appoint Wolf Haldenstein, Finkelstein Thompson, Gustafson Gluek and Wolf Popper as Class Counsel and Shook & Stone as Liaison Counsel.

## VII. THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY REVIEW

In determining whether a settlement is fair, the Court will weigh a multitude of factors including: "the strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  *Sandoval,* 2010 U.S. Dist. LEXIS 69799 (quoting *Class*

*Plaintiffs*, 955 F.2d at 1291).  However, this list of factors is not exclusive and the Court may weigh them differently depending on the circumstances of each case. *See Adoma v. Univ. of Phoenix Inc*., 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) ("This list of factors is not exclusive and the court may balance and weigh different factors depending on the circumstances of each case."); *Sandoval*, 2010 U.S. Dist. LEXIS 69799 ("This is by no means an exhaustive list of relevant considerations though, and the relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case.") (internal quotations omitted).

Here, the proposed Settlement plainly satisfies the standard for preliminary approval, as there is no question as to its fairness, reasonableness and adequacy, placing it squarely within the range of possible approval.

### A.   The Plaintiffs' Merits Case Is Strong

The Plaintiffs have an extremely strong claim in this matter.  Plaintiffs claim for conversion is apparent on its face – Defendants were heavily involved with and directed the Full Tilt Poker umbrella entity and were instrumental in the conversion of funds in the Player Accounts.  Despite repeated representations to the contrary, Defendants converted the funds in the Player Accounts by intermingling the funds with Full Tilt Poker operational funds and distributed those funds to themselves and fellow executives, directors members, and shareholders of Full Tilt Poker. Plaintiffs' claim is supported by the U.S. Department of Justice's action against Full Tilt Poker along with Lederer and Ferguson and subsequent distribution to the Class.  *See Pokerstars*, 11-cv-2564 (S.D.N.Y.); Burt Aff. Exs. H, I.  The claim clearly has merit as the Class's accounts were frozen and their monies were withheld for nearly three years.

### B.   The Litigation Is Complex and Will Be Expensive And Lengthy

The Parties face certainty that further litigation would be expensive, complex, and time consuming.  The expense, complexity and duration of litigation are significant factors considered in

evaluating the reasonableness of a settlement.  Here, the proposed Settlement specifically addresses the alleged deceptive conduct by providing carefully-tailored therapeutic relief to the proposed Settlement Class, which would protect them from similar, future misconduct by Defendants.  This relief is not subject to any change in the ever-evolving field of internet gaming and gambling law.  The proposed Settlement is able to provide these benefits without the risk and delays of continued litigation, trial and appeal.  Litigating this class action through trial would undoubtedly be time-consuming and expensive.

Defendants Lederer and Ferguson were signature executives and directors of the Full Tilt Poker umbrella entity, which included numerous entities and individuals in the United States and internationally. Continued litigation would require a significant number of additional depositions, a significant number of which would potentially take place overseas.  Given the international footprint, the mere service of deposition notices and discovery requests would prove to be an arduous task.  For example, in the related matter in U.S. Southern District of New York, Plaintiffs had to make repeated, expensive attempts and needed to do cumbersome research in order to perform service of entities on the isle of Alderney.

Moreover, Defendants have not yet produced formal discovery relating to Plaintiffs' claims but would be required to do so.  The production of additional discovery, combined with subsequent related expert reports and potential discovery disputes, would result in the expenditure of substantial time and expense.  At a minimum, absent settlement, litigation of these issues would likely continue for years before Plaintiffs or the Settlement Class would obtain any recovery, which would be heavily diluted by the costs of continued litigation.  Moreover, there remains a question of whether Plaintiffs and the Settlement Class would actually receive the fruits of any additional recovery.  A settlement eliminates the delay and expenses and strongly weighs in favor of approval.

By reaching this Settlement, the Parties will avoid protracted litigation and establish a means for prompt resolution of Settlement Class Members' claims with meaningful benefits to Settlement Class Members.  Given the alternative of continued, long and complex litigation before this Court, the risks involved in such litigation and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Settlement Class.

### C.   The Reaction of the Settlement Class

While the district court has virtually complete discretion as to the manner of giving notice to class members, notice to a Fed. R. Civ. P. 23(b)(2) Class is not required.  *See* Fed. R. Civ. P. 23(b)(2).  The Court in *Lilly v. Jamba Juice, Co*., determined that notice was not required where a Class sought only injunctive relief because the Class is "mandatory." 13-cv-02998, 2015 U.S. Dist. LEXIS 34498, at *24-25 (N.D. Cal. Mar. 18, 2015) (citing *Jermyn v. Best Buy Stores, L.P.,* 08 Civ. 214, 2012 U.S. Dist. LEXIS 90289, at *24 (S.D.N.Y. June 27, 2012).  The determination to forego notice with a Rule 23(b)(2) class has been referred to as "the more enlightened approach"[10] to Rule 23(e), which governs notice of class action settlements, as it "avoids judicial time expenditure and relieves the parties of the expense of notice when it is appropriate, without circumventing the policies of Rule 23(e)."  *Id*. at 212; *see also Jermyn*, 2012 U.S. Dist. LEXIS 90289, at *32.  As explained by the Court in *Lambeth v. Advantage Fin. Servs., LLC*, 1:15-cv-33-BLW, 2015 U.S. Dist. LEXIS 79009, at *6 (D. Idaho, June 16, 2015), where notice is found to be too expensive and burdensome, notice is unnecessary.

When considered in tandem with the Settlement in and subsequent disbursement resulting from the U.S. Department of Justice's settlement with Full Tilt Poker, the Settlement Class Members have been provided relief in the amount of their account principals and protection from future

---

[10] Newberg on Class Actions §11.72 (3d. ed. 1992).

misconduct by Defendants if they should re-enter the online gaming industry regardless of changes in the internet gaming laws.  Any remaining monetary claims are not viable and would effectively be forfeited to the U.S. Department of Justice based on requirements of 28 C.F.R. § 9.8.  The Settlement completes the relief previously provided to the Settlement Class Members.  It is likely that the cost of notice would eviscerate any settlement agreement because the cost would prove prohibitive.[11]

Additionally, as a class action subject to the Class Action Fairness Act or CAFA, the Settlement is subject to the applicable notice requirements.  *See* 28 U.S.C. § 1715.  Pursuant to CAFA, in this case it is required that notice be provided to the U.S. Attorney General and the attorney generals of the fifty states no later than ten days after the proposed Settlement is filed with this Court.  *See* 28 U.S.C. § 1715(a).  This has already been done in connection with the proposed settlement in the U.S. District Court for the Southern District of New York with objection from these government agencies and will be sent again based on this Settlement.[12]  The notice to the applicable regulators included, as required: (i) a copy of the complaints and attached exhibits; (ii) the settlement agreement; and (iii) an estimate of the number of class members residing in each state.  The notice to applicable federal and state regulators has aided in the supervision of this Settlement and effectively gauged the reaction of the class.[13]  Thus, responsible governmental advocates for consumers have

---

[11] In *Green v. American Express Co.*, the Court explained that because any monetary recovery was likely to be miniscule compared to the cost of notice that such notice would likely "jeopardize, and likely destroy the hard fought settlement agreement that the parties have presented to this Court" and as a result, ruled that notice was not required.  200 F.R.D. 211, 213 (S.D.N.Y. 2001).

[12] Moreover, notice was provided to the appropriate regulators in the *Bitar*, 11-cv-4521 (S.D.N.Y.), matter and in other formerly related matters, in connection with that proposed settlement and no objection or response was received from any regulator.  Thus, this should weigh in favor of preliminary approval.

[13] Additionally, the applicable federal and state regulators will be contacted concerning any updates to the Agreement and supporting documents.

had the opportunity to object and have raised no objection, which weighs in favor of preliminary approval.

Although the reaction of absent class members cannot be conclusively gauged, the fact that five Plaintiffs stand to receive no benefit different from the Settlement Class with the exception of modest incentive awards as the Court may approve, and their experienced counsel support the Settlement and Agreement are strong indications that members of the Settlement Class will also view it positively.  Counsel is experienced in litigation of this type and believes that this relief is extremely beneficial to the Class because it closes the loopholes present in the U.S. Department of Justice's settlements with Defendants.

All Settlement Class Members have been provided the means to apply for and receive one hundred cents on the dollar from the U.S. Department of Justice's settlement.  Further, even if additional funds could be recovered on top of the full account balances on April 15, 2011, it is extremely unlikely that any additional funds recovered would ever be distributed to the Class based upon the required forfeiture to the U.S. Department of Justice pursuant to 28 C.F.R. § 9.8.  Thus, notice is not required based on both Fed. R. Civ. P. 23(b)(2) and the circumstances and, as a result, the reaction of the Settlement Class weighs in favor of approval.[14]

_____

[14] If the Court believes some notice program is necessary or preferable, the form of such notice program is within the sound discretion of the Court.  While notice and opt-out is not required pursuant to Rule 23(b)(2), the trial court has broad discretion with regards to class certification and notice to the Settlement Class, and thus, may order notice to the Settlement Class.  *See Gray,* 279 F.R.D. at 508; *see also In re Lifelock, Inc.*, 2010 U.S. Dist. LEXIS 102612 (Class was provided notice and ability to opt-out despite neither being "required as Rule 23(b)(2) classes may be certified on a mandatory basis, i.e., without the right to opt out or the receipt of notice.").

As an alternative, Parties propose that notice be distributed via publication of a press release.  Given the prevalence of the specialty, on-line poker media and its service to the on-line poker playing community, publication notice would likely be sufficient to alert any and all class members, whose impracticable chance of further recovery is being waived.  Further, even though it is unnecessary, this would be a cost-effective solution that would not vitiate the Settlement.

### D.  The Current Stage of The Instant Litigation Favors Preliminary Approval

The parties are not required to engage in extensive discovery and no formal discovery is required for the Court to preliminarily approve a settlement.  *See Klee v. Nissan N. Am., Inc.*, 12-08238, 2015 U.S. Dist. LEXIS 88270, at *25 (C.D. Cal. July 7, 2015) ("Formal discovery is not required.").  Indeed, the Ninth Circuit has held that "[i]n the context of class action settlements, 'formal discovery' is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also Clesceri v. Beach City & Protective Servs.,* CV-10-3873, 2011 U.S. Dist. LEXIS 11676, at *27-28 (C.D. Cal. Jan. 27, 2011).

As detailed in the Burt Affidavit, the Parties have conducted significant informal discovery and dedicated vast resources investigating and advancing the Related Actions*.  See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010) ("Because counsel have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits, this factor does not weigh against preliminary approval.")  Moreover, "there is no indication that formal discovery would have assisted the parties in devising" the Agreement.  *Id*.  Class Counsel also conducted a thorough investigation of Plaintiffs' claims and conducted extensive research regarding the operations of Full Tilt Poker before filing their complaints.  *See* Burt Aff., ¶¶ 4-5.  Further, Class Counsel have thoroughly followed the developments in the U.S. Department of Justice action against Full Tilt Poker and that, combined with counsel's other efforts, has greatly obviated the need for formal discovery proceedings.  The involvement of U.S. Department of Justice provided a window into facts allowing for evaluation of the merits of the claim and the public disclosure of such information was akin to

discovery.  *See id.*, ¶ 4.  Thus, Class Counsel are well-positioned to evaluate the claims.  Thus, this factor favors preliminary approval.

### E.   Plaintiffs Face Hurdles In Securing Injunctive Relief

Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions.  The Parties disagree about the merits and there is substantial uncertainty about the ultimate outcome of this Action on the remaining issues.  Assuming that litigation was to proceed, the hurdles that Plaintiffs face prior to certification and trial are substantial.  While Class Counsel are confident in their ability to prove their case and attain class certification, however, they also believe that it is in the best interests of the Settlement Class to settle under these circumstances.  As equitable relief, there is inherent uncertainty in securing a permanent injunction.  In addition, while such a trial is being held, there is substantial risk that the internet gambling laws will have changed and Defendants will be able to return to the industry without limitation while this litigation is being tried and resolved.  The Agreement avoids the risks inherent in further litigation and provides the necessary protection for the Settlement Class that the U.S. Department of Justice's settlement did not.  Therefore, this factor weighs in favor of preliminary approval.

### F.   Injunctive Relief Is The Best Result for the Settlement Class

The very real and necessary injunctive relief is the best result possible for the Settlement Class and thus, the only relief Plaintiffs sought for the Settlement Class in the Amended Complaint. As the U.S. Department of Justice has provided the Settlement Class with the full amount of their Player Account principals, any recovery for punitive damages and/or interest would be above and beyond the actual value of the Player Accounts on April 15, 2011, and likely be a *de minimis* amount on an individual basis.  It is questionable, at best, whether even that recovery could be achieved, especially given the difficulties in proving punitive damages.

Even if Plaintiffs were to prevail on a claim for damages, it is uncertain whether the Class could recover from Defendants (or other third party individuals and/or entities), who have settled for massive sums with U.S. Department of Justice.   Recovery becomes even more unlikely when consideration is given to the complexity of the Full Tilt Poker umbrella with its intermingling, remote, shell entities either had no assets to begin with or were effectively cleaned out by the settlements with the U.S. Department of Justice.  *See* Burt Aff., Ex. J, p. 9-10.

The slight likelihood of a small individual recovery is cast even further into doubt based on 28 C.F.R. § 9.8, which places any potential recovery for the Settlement Class in peril because it would be subject to a forfeiture to the U.S. Department of Justice.[15] Plaintiffs believe that claims for monetary damages are not viable and almost certainly unrecoverable for the Class and thus, have sought and proposed injunctive relief for the Settlement Class.  The injunctive relief provides real protections that extend above and beyond the limits codified law in ever-changing field and will protect the Settlement Class from Defendants' wrongdoing in the future.  *See* Burt Aff., Ex. G, §3.3. When considered in tandem with the monetary relief from the U.S. Department of Justice's settlement, this provides the Settlement Class with complete relief – the account principals from April 15, 2011, and very real restrictions and limitations on Defendants' abilities to re-enter the online gaming industry.  The therapeutic relief sought by this Settlement has value to each individual Settlement Class Member that far outweighs what could be achieved if punitive damages and interest were sought and tried.  Therefore, this result is the best result possible for the Settlement Class.

---

[15] As explained on the Full Tilt Poker claims website (www.fulltiltpokerclaims.com), any claimant needed to meet the requirements of 28 C.F.R. § 9.8, including that any claimant "shall reimburse the Assets Forfeiture Fund for the amount received to the extent the individual later receives compensation for the loss of the property from any other source."  28 C.F.R. § 9.8(g).

### G. Maintaining the Class Action
### Through Trial May Be Challenging

While Plaintiffs are confident in their ability to maintain this action as a class action through trial, they nonetheless recognize that there are substantial hurdles in doing so.  Defendants will most certainly raise individual causation.  A class determination outside of settlement proceedings will require extensive and expensive briefing by both parties, the outcome of which is by no means assured.  This factor therefore favors preliminary approval.

## VIII.   THE PROPOSED SCHEDULE OF EVENTS

The key settlement-related dates are based on when preliminary approval of the Settlement is granted and the Final Fairness Hearing date.  Accordingly, Plaintiffs request that the Court schedule the Final Fairness Hearing for January 5, 2016, or as soon thereafter as the Court's schedule permits.

## IX.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court:  (1) grant preliminary approval of the Settlement reached by the Parties; (2) conditionally certify the Settlement Class; (3) designate Plaintiffs as Class Representatives; (4) appoint Wolf Haldenstein, Gustafson Gluek, Finkelstein Thompson, and Wolf Popper as Class Counsel and Shook & Stone as Liaison Counsel for the Settlement Class; (5) set a date for the Final Fairness Hearing; and (6) enter the contemporaneously-filed Proposed Order.

Dated:          New York, New York
                September 30, 2015

                                        **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ LLP**

                                        By: /s/ Thomas H. Burt
                                            Thomas H. Burt
                                            Patrick Donovan
                                            270 Madison Avenue
                                            New York, NY 10016

Telephone: (212) 545-4600
Fax: (212) 545-4653
Burt@whafh.com
Donovan@whafh.com

**FINKELSTEIN THOMPSON LLP**
Mila Bartos
James Place
1077 30th Street, N.W.
Suite 150
Washington, D.C., 20007
Telephone: (202) 337-8000
mbartos@Finkelsteinthompson.com

**GUSTAFSON GLUEK PLLC**
Daniel C. Hedlund
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

**WOLF POPPER LLP**
Lester Levy
Robert Plosky
845 Third Avenue
New York, NY 10022
Telephone: (212) 451-9633

**SHOOK & STONE CHTD.**
Leonard Stone
710 South Fourth Street
Las Vegas, NV 89101
Telephone: (702) 385-2220

**<u>CERTIFICATE OF SERVICE</u>**

I hear by Certify that on September 30, 2015, I caused the forgoing document and all accompanying documents to be filed on the Court's CM/ECF filing system, which notified all counsel of record of such filing.

Dated: September 30, 2015

BY: <u>/s/ Leonard Stone</u>
Leonard Stone